UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WATERMARK SOLID SURFACE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:07-0993 |
| ) | Judge Echols |
| STA-CARE, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court is Plaintiff Watermark Solid Surface, Inc.'s ("Watermark's") "Motion to Add Property to Injunction"[1] (Docket Entry No. 18), to which Defendant Sta-Care Inc. ("Sta-Care") has responded in opposition (Docket Entry No. 24). An evidentiary hearing was held on the Motion on February 29, 2008.

## I. FACTS

On November 30, 2007, the Court held a hearing on Plaintiff's Application for Mandatory Injunction (Docket Entry No. 3) in which Watermark requested the return of certain molds used for shower bases which were in the possession of Sta-Care. Since Sta-Care had no objection to returning the molds at issue and only objected to the amount of the bond, the parties were directed to agree on a proposed order which described with specificity the molds to be returned to Watermark. The parties submitted such a proposed Order and the Court entered an Order Granting Mandatory Injunction (Docket Entry No. 26) which allowed Watermark to retrieve from Sta-Care certain specified molds.

By way of the present Motion, Watermark seeks to add a "96 x 96 Universal Shower Base Mold,

---

[1]The full title of this filing is "Motion to Add Property to Injunction or, in the Alternative to Set a Hearing." The alternative request for a hearing was granted by Order dated February 12, 2008 (Docket Entry No. 36).

1

Part # 2320M."  (Docket Entry No. 18 at 1).  Watermark claims that this mold "was created using Watermark's design specification" and "contains Watermark's signature design and it is Watermark's mold."  (Id.).  This "signature design" contains a "sunburst" pattern on the shower floor consisting of channels which enhance water drainage.

During the evidentiary hearing on February 29, 2008, it quickly became apparent that the mold sought to be returned was not a "96 x 96 Universal Shower Base Mold, Part No. 2320M" and, in fact, Sta-Care possesses no such mold.  Instead, Sta-Care purchased a mold from Ken Fritz Tooling & Design, Inc. ("Fritz Tooling") which is identified as a "72 x 96 Universal Shower Base Mold."  This mold, which has a "sunburst" pattern similar to that utilized by Watermark, was first manufactured more than eighteen years ago and is generally kept in stock at Fritz Tooling.

At the evidentiary hearing, Travis Aldridge, Sta-Care's Executive Vice President, testified that with regard to the mold at issue, he discussed the need to find an "in-stock mold" with Steve Elmore, Watermark's President.  At the time, Watermark had purchase orders for shower bases which would be manufactured from the mold and it would take four to six weeks to have a custom mold made.  Aldridge showed Elmore a catalog containing a picture of a Gruber System mold[2] which might meet Watermark's needs.   After looking into the matter further, Aldridge discovered that Fritz Tooling had a mold which would meet Sta-Care and Watermark's needs and Sta-Care decided to purchase the mold from Fritz Tooling.  Aldridge testified that Sta-Care paid Fritz Tooling $4,550.00 for the mold, plus $262.35 for shipping.  This testimony is supported by an invoice (Def. Ex. 3) which was introduced at the evidentiary hearing.

---

[2]Gruber System, Inc. manufactures a 96" x 96" shower base mold and carries Gruber System's part number 23030, the same part number identified by Watermark in its "Motion to Add Property to Injunction."  The Gruber System mold, however, does not have channels in the floor to aid water drainage as does both the Watermark shower base and the mold manufactured by Fritz Tooling.

2

At the evidentiary hearing, Watermark failed to introduce any documentary evidence which would show that it paid Sta-Care for the specific mold at issue. Elmore testified that he believed the mold was paid for out of the "mold fund" which had been set up between Watermark and Sta-Care, but he had no specific documentary evidence in his possession to support that belief. Aldridge testified that Sta-Care paid for the mold in question as evidenced by the invoice, and the mold fund was never utilized to pay for this particular mold, nor was Watermark ever billed for the mold.

## II. **APPLICATION OF LAW**

Under Federal Rule of Civil Procedure 65(b), the Court may grant injunctive relief if it clearly appears from specific facts shown by testimony, affidavits or a verified complaint that immediate and irreparable injury, loss or damage will result to the applicant. In deciding whether to grant an injunction, the Court must consider four factors: (1) whether the party seeking the order has a strong likelihood of prevailing on the merits of the case; (2) whether the moving party will suffer irreparable injury if the order is not entered; (3) the potential harm the order would cause others; and (4) the public interest. See Leary v. Daeschner, 228 F.3d 729, 736 (6th Cir. 2000). In this case, the Court finds that Watermark is not entitled to injunctive relief relating to the specific mold at issue because it has not shown a substantial likelihood of success on the merits, nor has it shown that it will likely suffer immediate and irreparable injury.

"In order to establish a likelihood of success on the merits of a claim, a plaintiff must show more than a mere possibility of success." Six Clinics Holding Corp., II v. CAFCOMP Systems, 119 F.3d 393, 407 (6th Cir. 1997). Obviously, Watermark cannot prevail on a claim relating to a "96 x 96 Universal Shower Base Mold, Part # 23020M" as set forth in its motion since Sta-Care has no such mold in its possession. As for the mold manufactured by Fritz Tooling, Watermark has not

3

established a likelihood of success on the merits because it has offered no proof that it actually paid for such a mold, whereas Sta-Care has presented an invoice showing payment. There was no convincing evidence that the mold in question was paid for out of the mold fund maintained by Sta-Care for the benefit of Watermark.

Further, Watermark has not shown irreparable harm. "'As a general rule, a movant has not established irreparable harm where damages would adequately compensate the movant for the asserted harm.'" Performance Unlimited, Inc. v. Questar Publishers, Inc., 52 F.3d 1373, 1381 (6th Cir. 1995)(citation omitted). Here, it would appear that any harm allegedly suffered by Watermark by not having the mold would be compensable by an award of monetary damages. True, "[l]oss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute." Int'l Security Mgmt. Group. v. Sawyer, 2006 WL 1638537 at *8 (M.D. Tenn. 2006). However, to the extent Watermark asserts it may lose customers if its does not have the mold to fabricate shower bases, the undisputed evidence in the case is that such a mold can be easily purchased. Fritz Tooling has such a mold in stock and the costs of the mold including shipping is less than $5,000.00. Hence, Watermark can easily minimize whatever damages to its reputation it believes it may suffer by not having the mold which is in the possession of Sta-Care.

The third factor the Court must consider is whether injunctive relief will cause "substantial harm to others." Leary, 228 F.3d at 736. "This requires a court to balance the harm a plaintiff would suffer if its request for a [preliminary injunction] was denied with the harm the defendants would suffer if they were to be [temporarily] enjoined." Sawyer, 2006 WL 1638537 at *8. "It also requires a court to assess the impact a preliminary injunction might have on relevant third parties." Id. This appears to be a relatively neutral factor in this case because whichever party does not have

4

possession of the mold will not be in a position to manufacture shower bases from the mold. Both parties, however, have the same opportunity to purchase the mold from Fritz Tooling.

Finally, in determining whether to grant injunctive relief, the Court must consider "whether the public interest is advanced in issuing" the order. National Hockey League Players Ass'n v. Plymouth Whalers Hockey Club, 372 F.3d 712, 720 n. 4 (6th Cir. 2003). Aptly, this has been described as a "somewhat nebulous" factor. Sawyer, 2006 WL 1638537 at * 8. In the overall scheme of things, it is difficult to perceive any real harm to the public whether Sta-Care retains the Fritz Tooling mold or whether that mold is turned over to Watermark.

### III. CONCLUSION

It is incumbent upon the party seeking an injunction to show that it is entitled to such extraordinary relief. In this case, Watermark has failed to show that it will likely prevail on the merits, nor has it shown that it will suffer irreparable harm were the mold at issue not placed in Watermark's possession. Accordingly, Watermark's "Motion to Add Property to Injunction" will be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOL
UNITED STATES DISTRICT JUDGE

5